Plaintiffs' son, James Woodruff, age nineteen (19), died of injuries received when the car in which he was riding as a guest passenger collided with that of defendant in the intersection of Arkansas and Church Streets in the Town of Springhill, Louisiana. The accident occurred about the hour of 9:30 P.M. The car in which decedent was riding when injured was being operated by a young man named Oscar Collins. Defendant was driving his own car and going southerly on Arkansas Street. There is disagreement as to whether the Collins car was going northerly on Arkansas Street or entered the intersection from the east on Church Street. Defendant says it came from Church Street while Collins is positive he was driving on Arkansas Street.
Plaintiffs brought this suit to recover damages for the death of their son, charging that the accident and its results were due solely to defendant's negligence and carelessness in these respects, to-wit:
That he was operating his car at an excessive and careless rate of speed while under the influence of intoxicating liquors; that without signal or warning he sharply veered the car to its left side and collided with the Collins car at the time going northerly at a prudent and lawful rate of speed, and on its side of the street.
Defendant denies that the accident is attributable to any negligence or carelessness on his part, and avers that he was driving at a lawful rate of speed on his side of the street and had the right-of-way; that the Collins car, without stopping or giving signal of the intention to do so, entered and attempted to cross the intersection from the east side at an excessive speed; that this action created an emergency, solely due to Collins' negligence and, confronted therewith, defendant pulled his car to the extreme right side of the street in an effort to avert the impending collision. He, therefore, casts the responsibility for the accident entirely upon Collins; and, in the alternative, pleads the negligence of Collins, should he, defendant, be held to have been negligent in any respect, in bar of plaintiffs' recovery.
Judgment was awarded to plaintiffs in the sum of $4,500 with legal interest from judicial demand and defendant brings appeal. The appeal has not been answered. Defendant does not complain of the quantum, therefore, the only question tendered for decision is that of responsibility for the accident.
Questions of fact and law are involved. The charge that defendant was intoxicated is not borne out by the testimony.
The accident was witnessed by only three persons, to-wit: the decedent and the two drivers.
The defendant in some respects testified contrary to the allegations of his petition, although he personally subscribed to the affidavit thereto. He says that he was driving at a speed of between forty and forty-five miles per hour on his side of the street, the hard surfaced part of which is 18 feet wide, and when about 40 feet from the intersection the Collins car suddenly entered it from Church Street and that he sounded the horn, applied the brakes forcefully and gripped the wheel. Beyond this he is unable to give any of the facts of the accident. Rubber burns on the road's surface indicate clearly that the brakes were applied as defendant says. These signs support the theory that the brakes did not respond equally and thereby the car veered sufficiently to its left side to put the front left wheel slightly east of *Page 798 
the road's center at the locus of the collision. The answer sets forth that on seeing the Collins car, defendant swerved his car as far as possible to his right side. This, obviously, is not correct.
Collins testified that he never saw the defendant's car at all. We are unable to perceive how this can be true if he was driving on Arkansas Street, because for several blocks up the street it is level and the lights on defendant's car were burning brightly. He also testified that he intended turning west on Church Street to carry the decedent home; that as he slowly entered the intersection he pulled his car slightly to his right and then to his left, but before reaching the center of the intersection, the collision occurred.
The locus and character of the injuries to each car strongly support defendant's version of the facts of the accident. A mechanic who examined both cars the morning after the accident says that the right front fender and right wheel and knee action of the Collins car were badly mashed and damaged. There were no injuries to the left side of the car. The left front fender, left running board, left door and left side of the cowl of the Stewart car were seriously damaged and the frame bent; the door and cowl were "caved in" and the fender mashed into and against the hood. There were no signs of injury on the right side of this car. These physical facts show beyond question that the Collins car was heading west and rammed the other car as it passed in front of it. This being true, the negligence of Collins stands out in bold relief. He lived in Springhill, was well acquainted with its streets, and well knew that traffic on Arkansas Street was favored by common consent and observance over that on Church Street. Yet, he drove heedlessly into the intersection unmindful of the grave possibilities his careless action would thereby create. The fact that he did enter the intersection from the east (there being obstruction to vision in the angle to his right) accounts in part, we think, for him not seeing defendant's car before the collision.
However, if we consider Collins' version of how the accident occurred, his negligence is equally as well disclosed. He says he made a left turn and then the accident occurred. When he turned, if he did so, the defendant's car was in sight not far away, with lights burning; yet, he did not see it. To execute a turn of this character, about the most hazardous to attempt with a motor vehicle, the driver should carefully survey the surroundings and satisfy himself that traffic conditions warrant the action. If he fails to do this, responsibility for harmful results are his; he acts at his own risk and peril.
We are satisfied that defendant has not exaggerated the speed he was driving when he observed the Collins car entering the intersection. Very likely he was moving more rapidly than he says. We are also convinced that the Collins car was going at a fairly rapid speed. The nature of the damages to Stewart's car argues strongly for this conclusion; and the antics of both cars after the impact also support this belief. The Collins car rested about 50 feet below the intersection, on the east side of the street, facing north. There is testimony to the effect that it turned over one or more times immediately after the impact. It is certain the Stewart car turned over several times before resting. Its velocity was so great that it climbed or rolled over an embankment 3 or 4 feet high, adjacent to the west side of Arkansas Street and went approximately 30 feet before stopping. It finally rested some 60 feet from the intersection. If the Collins car had been going slowly when it rammed the other car, it would not likely have performed as it did.
The trial judge convicted both drivers of negligence but states that he thought the negligence of defendant the greater. In written reasons for judgment the court says that defendant's car "swerved over to the left side of the street". We are certain that defendant's car did not swerve across the street until after application of the brakes. If defendant was guilty of actionable negligence as a contributing or proximate cause of the accident, it consists of operating his car at an excessive, illegal and dangerous rate of speed.
There is a dearth of evidence anent the speed limit for motor vehicles in Springhill. Evidence on the subject indicates a twenty mile per hour limit prevailed and that notice to that effect was posted as required by Rule 4 (d) of the Highway Regulatory Act of 1938. We feel warranted in so holding. Such a limit is not uncommon in towns and villages.
At all events, a speed of forty or forty-five miles per hour in a town of this size, even on a right of way street, is unreasonable and excessive. The testimony discloses *Page 799 
that within a radius of a block of the intersection there is located a church, high school buildings and many residences indicative of a thickly populated area.
The privilege attending motoring on a right of way street or road does not confer license to drive at a dangerous and excessive rate. Rule 4 (a) of the Highway Regulatory Act of 1938 (No. 286) deals with such cases. In part it reads as follows: "* * * it shall be unlawful for any person to drive or operate any motor or other vehicle upon the public roads, highways and bridges of this State at other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing, * * * and, subject to the special provisions and limitations contained in this Act, the person so driving or operating, or causing to be driven or operated, a motor vehicle on such public roads, highways and bridges, shall be held and deemed to be prima facie at fault in and responsible for any accident or damage proximately flowing therefrom or connected therewith, which presumption, however, may be rebuted and overcome by proper showing of the contrary."
Infraction of a traffic law, it is well settled, in this and other states, is negligence per se. It is equally well settled that such negligence when contributing to an injury is not actionable unless it is held to be the efficient or proximate cause of the accident producing the injury.
It appears clear to us that the excessive and unlawful speed of defendant's automobile was an efficient and a proximate cause of this tragic accident. Had he been going at a reasonable and lawful speed, the Collins car would have successfully cleared the intersection; and had he been observing the legal speed limit he would have been able to stop his own car by application of the brakes before reaching the intersection. The combined concurring negligence of the two drivers produced the accident, for the results of which they are equally responsible. Plaintiffs chose to implead only one of the tort feasors. It was optional with them to so proceed.
Defendant does not allege in answer, nor is it otherwise contended, that the decedent was to any extent negligent. The record is barren of anything warranting such an inference.
When the accident occurred the decedent was beside the driver on the front seat. The car was borrowed the morning of the accident (a Sunday) for a day's pleasure. Collins went to the home of decedent's parents in Springhill and invited decedent to accompany him. This invitation was readily acceded to and the two young men soon thereafter contacted girl friends and a day of pleasure driving over the country and visiting was had by the party. The girls had been carried to their respective homes just prior to the accident. During the day decedent drove part of the time and paid one-half of the price of gas purchased.
In brief, defendant's counsel advance the argument that the relation of decedent and Collins was that of joint adventurers, which, if true, would bar recovery. This defense was not specifically raised by the answer.
Under the settled jurisprudence of this state, the decedent and Collins were not engaged in a joint adventure. The law governing this relationship is thoroughly discussed by this court in Squyres v. Baldwin et al., 181 So. 584 and by the Supreme Court in its opinion affirming this decision reported in 191 La. 249,185 So. 14. The Supreme Court in announcing the conditions which must be present to create or superinduce this relationship, quoted approvingly from 45 C.J., § 588, pp. 1031, 1032, wherein it is said:
"`To constitute occupants of a conveyance joint adventurers, there must be not only joint interest in the objects and purposes of the enterprise, but also an equal right, express or implied, to direct and control the conduct of each other in the operation of the conveyance.' See, also, Bofill v. New Orleans Ry. Light Co., 135 La. 996, 66 So. 339, L.R.A.1915C, 419; Daull v. New Orleans Ry. Light Co., 147 La. 1012, 86 So. 477; Churchill v. Texas Pacific Railway Co., 151 La. 726, 92 So. 314; Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A.L.R. 148."
None of the elements of this definition of joint adventure is present in the case before us. It is not proven and certainly there is nothing in the record to warrant the implication that James Woodruff, the deceased, exercised or had the right to exercise control over Oscar Collins' operation of the car nor that he attempted to do so. The car was borrowed by Collins from his brother. He was driving it *Page 800 
when the accident occurred and in all other respects, so far as the record reveals, he was independent and uncontrolled in determining how the car should be driven and where.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.